281 So.2d 10 (1973)
Louis TIPPER, Sr., Petitioner,
v.
GREAT LAKES CHEMICAL COMPANY et al., Respondents.
No. 43458.
Supreme Court of Florida.
July 25, 1973.
*11 Steve M. Watkins, of Watkins & Hill, Tallahassee, for petitioner.
Donald O. Hartwell of Hartwell & Hall, and W.K. Whitfield, Tallahassee, for respondents.
ERVIN, Justice.
We have for review by petition for writ of certiorari, a decision of the Industrial Relations Commission which reversed a decision of the Judge of Industrial Claims. We have jurisdiction pursuant to Florida Constitution, Article V, Section 3(b)(3) (1973), F.S.A.
On Sunday, August 8, 1971, a tractor-trailer owned by the employer, respondent herein, and enroute from El Dorado, Arkansas, was involved in a traffic accident in Gadsden County outside of the city limits of Quincy, Florida. The truck was loaded with cylinders of methyl bromide gas, which were damaged as a result of the collision. Deadly gas began escaping from the cylinders immediately following impact.
Sergeant Cecil E. Ellis of the Department of Public Safety of Quincy, Florida, received notification of the accident and he, in turn, notified the office of the Sheriff of Gadsden County and Chief of Police of Quincy, R.D. Edwards. Chief Edwards instructed Sergeant Ellis to contact the claimant, petitioner herein, because of his expertise in the handling of deadly gases as part of his regular employment with Southern Chemical Sales and Service, Inc., of Quincy, Florida (hereinafter "Southern Chemical"). Louis Tipper, Sr., the petitioner, responded immediately to Sergeant Ellis' call for aid and, after obtaining gas masks, proceeded from his home to the scene of the accident.
Upon arriving at the scene, the claimant found approximately twenty cylinders of methyl bromide scattered over the highway. Some of the tanks were ruptured, posing a threat to the safety of onlookers, who were gathering in the vicinity of the escaping gas. Traffic was backed up for a distance of approximately two miles. Tipper worked in and around the toxic gas for some five or six hours, offering advice and rendering assistance during the clean-up operation. He was finally able to return home at around 1:15 A.M. the following morning, and he then noticed he had chemical burns on his feet.
*12 On Monday morning, August 9, claimant reported to work at his regular employment with Southern Chemical and met Mr. Joe Ford, employed as a safety man with respondent, Great Lakes Chemical Company (hereafter "Great Lakes"). Mr. Ford expressed concern over Tipper's exposure to the toxic gas and suggested that he "see a doctor." Mr. Tipper visited Tallahassee Memorial Hospital, where he was hospitalized for over three weeks and temporarily totally disabled until December 13, 1971.
A claim for workmen's compensation was originally filed by the claimant against Great Lakes, and the Sheriff's Department of Gadsden County, Florida. The Sheriff's Department was dismissed as a party in this cause after the evidence failed to connect the Sheriff's Department with the claimant's work activities. Evidence introduced at the hearings held on November 29, 1971, February 4, 1972, and February 23, 1972, was directed in large part at the issue of whether the claimant was an employee of respondent at the time of the accident. The Judge of Industrial Claims, after reviewing the facts as outlined above, stated the issue and the reason for his conclusions as follows:
"The subject case involved a public emergency situation. It also involved the recruiting of the claimant because of his knowledge and experience in dealing with Methyl Bromide. The precise question presented is whether or not the Chief of Police of the City of Quincy or his designate, had the authority to engage the claimant on behalf of Great Lakes Chemical Company. Under the circumstances of this case, I find that he did.
"I base my conclusions on several grounds: (1) As a police officer, in a public emergency, he had the authority to engage the claimant on behalf of the employer; (2) from the facts, an implied contract of employment was established, which was confirmed the following morning when Mr. Joe Ford of Great Lakes Chemical Company was advised of services rendered by the claimant and told Mr. Tipper to see a doctor; (3) the services rendered by the claimant were beneficial to the employer and advanced his interests."
The Industrial Relations Commission, upon application for review of the Judge of Industrial Claims' order allowing compensation, reversed that decision and dismissed petitioner's cause. In a lengthy opinion, the Commission conceded that an implied contract of employment was a "possibility" under certain circumstances, but that the events of August 8, 1971, involving the claimant, would not support such a conclusion as a matter of law. The Commission stated:
"It is to be borne in mind that even as the appellee [petitioner] was employed throughout by Southern Chemical, the accident and the events of August 8 involving this employee occurred in the unincorporated area of Gadsden County, and the appellee was induced to attend the accident and perform his genuinely commendable services by a police officer of the municipality of Quincy  which officer had no obvious jurisdiction in an unincorporated Gadsden County, and no evidence was adduced to support such jurisdiction. Nevertheless, the Judge stated the issue fairly and concluded, without statement of any rationale, that the Chief of Police of Quincy had the authority to hire the appellee in unincorporated Gadsden County for and on behalf of the appellant/employer, Great Lakes Chemical Company. There is no decisional, statutory or textual authority which has been cited to support such congeries of elisions."
Additionally, the Commission stated that even if there were an implied contract of hire, there was no finding that the claimant was an "employee" as distinguished from an "independent contractor." In support of that argument, the Commission observed that the claimant brought his own materials to the scene of the accident and *13 took no orders from any of respondent's supervisors, who never had the opportunity to know of the claimant's presence at the scene. For these reasons, the Commission ruled that the Judge of Industrial Claims erred as a matter of law in finding the existence of an employment relationship, and accordingly denied petitioner workmen's compensation benefits.
The basic issue in petitioner's cause, which he now asks this appellate body to review and decide, is: Whether the service performed by the claimant for the respondent amounted to an implied contract of employment within the contemplation of, F.S., § 440.02(2), F.S.A.
F.S., Section 440.02(2)(a), F.S.A. provides:
"`Employee' means every person engaged in any employment under any appointment or contract of hire or apprenticeship, express or implied, oral or written, including aliens, and also including minors whether lawfully or unlawfully employed." (Emphasis supplied.)
An "implied" contract, as that term is used in the statute, means either implied in fact or implied in the law of contracts. Cf. Stuyvesant Corp. v. Waterhouse, 74 So.2d 554, 559 (Fla. 1954). Express contracts and contracts implied in fact require the assent of the parties, whereas contracts implied in law, commonly called "quasi contracts", are obligations imposed by law on grounds of justice and equity, and do not rest upon the assent of the contracting parties. This legal fiction was adopted by the law to provide a remedy in instances where one of the contracting parties is unjustly enriched. See 7 Fla.Jur. Contracts § 6; 28 Fla.Jur. Restitution and Implied Contracts, §§ 4, 5.
Generally, the test of an implied contract of employment is whether services were performed under circumstances fairly raising a presumption that the parties understood and intended that compensation was to be paid.
Absent such circumstances, the "employee" is referred to as an "officious intermeddler" with a finding that no implied contract existed, or in the more benign language of the Industrial Relations Commission, an "admirable volunteer", with the same end result. See 66 Am.Jur.2d Restitution and Implied Contracts, §§ 19, 20. However, there is an exception to this general proposition which is explained in the following quote:
"The basic principle that a person who officiously confers a benefit upon another is not entitled to restitution therefor, and the general rule that a person who without mistake, coercion, or request has unconditionally conferred a benefit upon another is not entitled to restitution, except where the benefit was conferred under circumstances making such action necessary for the protection of the interests of the other or of a third person, apply to the performance of services for the benefit of another or the performance of a duty of another to a third person. Where it is imperatively necessary for the protection of the interests of third persons or of the public that a duty owed by another should be performed, a stranger who performs it may be entitled to restitution from the other, even though his performance was without the other's knowledge or against his will. Furthermore, a person or his belongings may be in such jeopardy that a stranger is privileged to intervene and to recover for his salvage services." (Emphasis supplied.) 66 Am.Jur.2d, Restitution and Implied Contracts § 23.
A more concise statement of this principle is found in the Restatement of the Law of Restitution, § 112:
"A person who without mistake, coercion or request has unconditionally conferred a benefit upon another is not entitled to restitution, except where the benefit was conferred under circumstances making such action necessary for the protection of the interests of the other *14 person or of third persons." (Emphasis supplied.)
The cases arising under implied contracts for services rendered usually involve suits in contract for the value of the services. There is no decisional Florida law, and very little textual authority or case law from other jurisdictions dealing with the application of quasi contractual employment in emergency circumstances. Cf. Conveyor's Corporation of America v. Industrial Commission, 200 Wis. 512, 228 N.W. 118 (1929); Larson on Workmen's Compensation, § 47.42(c). However, the basic issue in petitioner's cause is the same as if he were suing for the value of the services which he performed, to wit: Whether or not there existed an implied contract of employment. We find that such an implied contract existed within the purview of F.S., § 440.02(2) F.S.A.
The result which we reach is dictated by the emergency nature of the events which transpired on August 8, 1971. Had the collision occurred in El Dorado, Arkansas, where Great Lakes' home office is located, company officials undoubtedly would have been informed immediately and could have selected and dispatched a man or team of men to deal with the escaping lethal gas and protect the public and its own private interest. As it happened, the accident occurred several hundred miles from El Dorado. Great Lakes was not in a position to enter into a formal contract of employment with a stranger of whose existence it knew nothing, and yet upon whose expertise it was ultimately forced to rely in an effort to save innocent lives and protect its property interests. Fortunately for the respondent, there was a man living in the vicinity of Quincy, who was familiar with the handling of methyl bromide, and willing to leave the comfort of his home on a Sunday evening and work continuously for five or six hours to protect Great Lakes' interests. This man, whose praiseworthy conduct resulted in personal injuries to him, requiring over three weeks' hospitalization, is entitled to more, under Florida law, than a pat on the back and the label: "Admirable Volunteer."
Our finding does not require a discussion of whether the Chief of Police of Quincy had legal authority to "hire" the claimant on behalf of Great Lakes. The important facts of this case concern the claimant's performance of services for Great Lakes, and not how he was called to action. Great Lakes was in dire need of help in an emergency and the claimant rendered aid and is entitled to benefits arising out of the implied contractual arrangement.
Under the theory of a quasi contract of employment, there is also no need to discuss Mr. Joe Ford's supposed "confirmation" of the agreement by his statement, "See a doctor." The employment contract in petitioner's case does not depend on any such confirmation, although it would seem to lend merit to petitioner's position insofar as it indicates that Great Lakes was appreciative of the services Tipper rendered and was concerned about his future well-being.
In conclusion, we wish to reassert this Court's position that the Workmen's Compensation Act was designed to provide relief for injured employees and should be given a liberal construction to effect that result.
"Due to the impossibility or impracticality of providing for every conceivable factual situation, application of the statute to achieve a known purpose of legislation may sometimes create a technical inconsistency. We feel that workmen's compensation acts were designed to remove from the workmen himself the burden of his own injury and disability and place it on the industry which he served. Such acts should be liberally construed with the interest of the working man foremost." Dennis v. Brown, 93 So.2d 584 (Fla. 1957).
The cause which we have under review demands an application of the above principle of statutory interpretation. The *15 claimant was serving the respondent when he risked his life and health in order to protect the lives and health of others and to restrict the liability of the respondent from further damages from the accident. A contract of employment, implied in law, arose out of this performance and the claimant is now entitled to workmen's compensation.
Accordingly, the petition for a writ of certiorari is granted, the order of the Industrial Relations Commission is quashed, and the cause is remanded to the Commission with instructions to reinstate the order of the Judge of Industrial Claims.
CARLTON, C.J., and ROBERTS, BOYD and McCAIN, JJ., concur.