380 So.2d 516 (1980)
NURSING CARE SERVICES, INC., Appellant,
v.
Mary DOBOS, Appellee.
No. 78-1345.
District Court of Appeal of Florida, Fourth District.
February 27, 1980.
*517 Robert C. Furr, Boca Raton, for appellant.
Leo J. Fox, Boca Raton, for appellee.
HURLEY, Judge.
Plaintiff, Nursing Care Services, Inc., appeals from that part of a final judgment which disallowed compensation for certain nursing care services. Our review of the record reveals substantial uncontradicted testimony supporting plaintiff's theory of recovery and thus we remand for entry of an amended final judgment.
Mary Dobos, the defendant, was admitted to Boca Raton Community Hospital with an abdominal aneurysm. Her condition was sufficiently serious to cause her doctor to order around-the-clock nursing care. The hospital implemented this order by calling upon the plaintiff which provides individualized nursing services.
Mrs. Dobos received nursing care which in retrospect can be divided into three periods: (1) two weeks of in-hospital care; (2) forty-eight hour post-release care; and (3) two weeks of at-home care. The second period of care (the forty-eight hour post-release care) was removed as an issue at trial when Mrs. Dobos conceded that she or her daughter authorized that period of care. The total bill for all three periods came to $3,723.90; neither the reasonableness of the fee, the competency of the nurses, nor the necessity for the services was contested at trial.
The gist of the defense was that Mrs. Dobos never signed a written contract nor orally agreed to be liable for the nursing services. Testifying about the in-hospital care, she said, "Dr. Rosen did all the work. I don't know what he done (sic), and he says, I needed a nurse." It is undisputed that Mrs. Dobos was mentally alert during her at-home recuperation period. Asked if she ever tried to fire the nurses or dispense with their care, she replied, "I didn't. I didn't know who  I thought maybe if they insist, the doctors insist so much, I thought the Medicare would take care of it, or whatever. I don't know."
After a non-jury trial, the court granted judgment for the plaintiff in the sum of $248.00, the cost of the forty-eight hour post-release care. It declined to allow compensation for the first and third periods of care, saying,
"... [T]here certainly was a service rendered, but based on the total surrounding circumstances, I don't think there is sufficient communications and dealings with Mrs. Dobos to make sure that she knew that she would be responsible for those services rendered...."
*518 We concur in the trial court's determination that the plaintiff failed to prove an express contract or a contract implied in fact. It is our view, however, that the uncontradicted testimony provided by plaintiff and defendant alike, clearly established a contract implied in law which entitles the plaintiff to recover.
Contracts implied in law, or as they are more commonly called "quasi contracts", are obligations imposed by law on grounds of justice and equity. Their purpose is to prevent unjust enrichment. Unlike express contracts or contracts implied in fact, quasi contracts do not rest upon the assent of the contracting parties. See generally, 28 Fla. Jur., Restitution and Implied Contracts.
One of the most common areas in which recovery on a contract implied in law is allowed is that of work performed or services rendered. The rationale is that the defendant would be unjustly enriched at the expense of the plaintiff if she were allowed to escape payment for services rendered or work performed. There is, however, an important limitation. Ordinarily liability is imposed to pay for services rendered by another only when the person for whose benefit they were rendered requested the services or knowingly and voluntarily accepted their benefits. Yeats v. Moody, 128 Fla. 658, 175 So. 719 (1937); Strano v. Carr & Carr, Inc., 97 Fla. 150, 119 So. 864 (1929); Taylor v. Thompson, 359 So.2d 14 (Fla. 1st DCA 1978); and Tobin & Tobin Insurance Agency, Inc. v. Zeskind, 315 So.2d 518 (Fla. 3d DCA 1975).
The law's concern that needless services not be foisted upon the unsuspecting has led to the formulation of the "officious intermeddler doctrine." It holds that where a person performs labor for another without the latter's request or implied consent, however beneficial such labor may be, he cannot recover therefor. Tipper v. Great Lakes Chemical Company, 281 So.2d 10 (Fla. 1973). A notable exception to this rule, however, is that of emergency aid:
A person who has supplied things or services to another, although acting without the other's knowledge or consent, is entitled to restitution therefore from the other if he acted unofficiously and with intent to charge therefore, and the things or services were necessary to prevent the other from suffering serious bodily harm or pain, and the person supplying them had no reason to know that the other would not consent to receiving them, if mentally competent, and it was impossible for the other to give consent or, because of extreme youth or mental impairment, the other's consent would have been immaterial. 66 Am.Jur.2d, Restitution and Implied Contract, § 23.
In the case at bar it is unclear whether Mrs. Dobos, during the period of in-hospital care, understood or intended that compensation be paid. Her condition was grave. She had been placed in the hospital's intensive care unit and thereafter had tubes and other medical equipment attached to her body which necessitated special attention. She was alone, unable to cope and without family assistance. It is worthy of note that at no point during the litigation was there any question as to the propriety of the professional judgment that the patient required special nursing care. To the contrary, the record demonstrates that the in-hospital nursing care was essential to Mrs. Dobos' health and safety. Given these circumstances it would be unconscionable to deny the plaintiff recovery for services which fall squarely within the emergency aid exception. Tipper v. Great Lakes Chemical Company, supra.
The third period of care is less difficult. It is unquestioned that during the at-home recuperation, Mrs. Dobos was fully aware of her circumstances and readily accepted the benefits conferred. Given such facts, we believe the rule set down in Symon v. J. Rolfe Davis, Inc., 245 So.2d 278, 279 (Fla. 4th DCA 1971) must govern:
It is well settled that where services are rendered by one person for another which are knowingly and voluntarily accepted, the law presumes that such services are given and received in expectation of being paid for, and will imply a promise to pay what they are reasonably worth.
*519 A patient's unannounced misconception that the cost of accepted services will be paid by an insurer or Medicare does not absolve her of responsibility to bear the cost of the services.
As a postscript we note that Mrs. Dobos' home recuperation was interrupted by her readmission to the hospital with an apparent heart attack. In this age of burgeoning malpractice actions it is not idle conjecture to ponder what her legal position might have been had the plaintiff unilaterally terminated its services at a time of vital need. To its credit, it did not and therefore it is entitled to just compensation. Accordingly, we remand the cause to the trial court with instructions to enter an amended final judgment for the plaintiff in the sum of $3,723.90 plus interest and court costs.
It is so ordered.
ANSTEAD and LETTS, JJ., concur.