421 So.2d 558 (1982)
Charles HERMANOWSKI, As General Partner On Behalf of Americable Associates, a Florida Limited Partnership, Appellant,
v.
NARANJA LAKES CONDOMINIUM NO. FIVE, INC., a Florida Non-Profit Corporation, Appellee.
No. 81-2133.
District Court of Appeal of Florida, Third District.
September 28, 1982.
Rehearing Denied December 1, 1982.
*559 Williams, Salomon, Kanner, Damian, Weissler & Brooks and Gary S. Brooks, Miami, for appellant.
Jeffrey M. Feuer, Miami, for appellee.
Before HUBBART, C.J., and HENDRY and JORGENSON, JJ.
JORGENSON, Judge.
Americable, through its general partner Charles Hermanowski, brought an action sounding in quantum meruit for the reasonable value of certain enhanced cable television services provided to Naranja Lakes Condominium. From an adverse judgment below, Americable appeals alleging as error the trial court's finding that the parties had not reached agreement on the rates for the enhanced services. We conclude that no reversible error has been demonstrated and, consequently, affirm.
Naranja Lakes Condominium Association entered into a written agreement in 1973 with Americable's predecessor, which provided for cable television service to the Association at a fixed rate for twenty-five years. The contract further provided that:
It is further mutually agreed and understood by both parties that from time to time other ancillary cable television services will become available. As these *560 additional services become available they will be offered to the owner at rates to be agreed upon by both parties.
The trial testimony and the exhibits introduced in evidence during the proceedings below affirmatively demonstrate that no meeting of the minds, with respect to the additional services or rates, ever occurred. Indeed, the record demonstrates that on several occasions, Americable, through Hermanowski, sought board approval for the improvements. None was forthcoming. Hermanowski, by his own testimony, clearly establishes his difficulty in dealing with the Association. This record is devoid of any evidence consistent with the notion that Americable was entitled to rely on anything other than a board resolution. Miller v. Chase & Co., 88 Fla. 500, 102 So. 553 (1924).
A greater burden should be placed on a plaintiff who relies upon an implied contract than on one who uses reasonable care and foresight in protecting himself by means of an express contract. Bromer v. Florida Power & Light Co., 45 So.2d 658 (Fla. 1950). Nor will the law imply a contract where a valid one exists. Hazen v. Cobb, 96 Fla. 151, 117 So. 853 (1928). The Association should not be penalized for Americable's loose dealings. Bromer, supra, at 660. Americable failed to meet its burden of proof, which was that the then-president of the Association had board approval to authorize the improvements or that the Association ever ratified the improvements. Lee v. Melvin, 40 So.2d 837 (Fla. 1949); see also 8 Fla.Jur.2d, Business Relationships § 313 (1978). Nor can Americable claim that the Association had actual or implied knowledge of the improvements since the bulk of the work in upgrading the system was done some distance away from the condominium complex.
Notwithstanding the evident problems with the Association's board, Americable completed the improvements in such a way that it was technically unfeasible to restore the Association to its original position. Where the negotiations were unsuccessful, there is no basis for imposing a quasi-contractual liability on the Association. Bullock v. Hardwick, 158 Fla. 834, 838, 30 So.2d 539, 541 (1947); Gould v. American Water Works Service Company, 52 N.J. 226, 245 A.2d 14, 16 (1968); see also Restatement of Restitution § 112.
In Tipper v. Great Lakes Chemical Company, 281 So.2d 10 (Fla. 1973), our Supreme Court set forth the law regarding express, implied and quasi-contracts. In so doing, the Court approved the Restatement of Restitution § 112:
A person who without mistake, coercion or request has unconditionally conferred a benefit upon another is not entitled to restitution, except where the benefit was conferred under circumstances making such action necessary for the protection of the interests of the other person or of third persons.
Tipper at 13. That exception is not present here.
Americable officiously conferred the benefits and, in so doing, prevented by its own action restoration of the status quo.[1] In our view, no unjust enrichment occurs on these facts. To hold otherwise would put Americable in the position of being able to enhance cable TV services without any meeting of the minds regarding rates or services and subsequently seek additional payment on a quantum meruit theory.
We have no disagreement with the cases cited by the dissent. We conclude only that they are inapposite since Americable is no more than an officious provider of services never agreed to nor approved of by the Association.
For the reasons expressed herein, the judgment under review is affirmed.
HENDRY, Judge, dissenting.
I respectfully dissent. The majority's conclusion that the parties failed to reach an agreement on the rates for enhanced *561 services, which Americable has continued to provide without compensation, in no way precludes Americable from recovering in quantum meruit for the unjust enrichment of the Association. Indeed, the very essence of quantum meruit lies in the failure of the parties to reach an agreement:
Any proof of an express agreement between the parties as to the compensation to be paid for the services rendered would defeat rather than sustain an action based upon quantum meruit... .
Solutec Corp. v. Young & Lawrence Associates, Inc., 243 So.2d 605, 606 (Fla. 4th DCA 1971). See also Tipper v. Great Lakes Chemical Co., 281 So.2d 10 (Fla. 1973); Hazen v. Cobb, 96 Fla. 151, 117 So. 853 (1928). Failure of the record evidence to demonstrate that a meeting of the minds ever occurred between the parties as to the rates for the additional services thus supports Americable's position.
To recover under a theory of quantum meruit, a plaintiff must disavow the existence of an express contract, Tobin & Tobin Insurance Agency, Inc. v. Zeskind, 315 So.2d 518 (Fla. 3d DCA 1975); Solutec Corp. v. Young & Lawrence Associates, Inc., supra, and show that the recipient (1) acquiesced in the services, (2) was aware of an expectation of compensation, and (3) was unjustly enriched. See Yeats v. Moody, 128 Fla. 658, 175 So. 719 (1937); Coffee Pot Plaza Partnership v. Arrow Air Conditioning and Refrigeration, Inc., 412 So.2d 883 (Fla. 2d DCA 1982); Nursing Care Services, Inc. v. Dobos, 380 So.2d 516 (Fla. 4th DCA 1980); Symon v. J. Rolfe Davis, Inc., 245 So.2d 278 (Fla. 4th DCA), cert. denied, 249 So.2d 36 (Fla. 1971). Here, Americable not only disaffirmed the express contract, but has also, in my opinion, satisfied the three requirements necessary to recover under quantum meruit.
The first two requirements that must be shown, that the recipient acquiesced in the services and was aware of an expectation of compensation, are documented by two letters introduced into evidence. One, a letter dated October 16, 1978 from Hermanowski to Norman Bouchard (then-president of the Association), states that beginning in December, 1978, the monthly charge for cable service for the condominium would be increased from $4.00 to $6.00 per unit for the additional channels. Second, a letter from Bouchard to Hermanowski dated December 14, 1978, advises Americable that the rate increase would be held in escrow until ancillary problems with a separate security channel were worked out. By stating that the increase would be withheld pending satisfaction with maintenance problems, the Association acknowledged that there would be a rate increase for the enhanced services. This letter also demonstrates that there was at least implied consent to installation of the additional channels, belying the fact that Americable was an "officious provider of services." The Association's contention that such services were unauthorized is without merit in light of this letter clearly indicating that the Association had already initiated collection of the supplemental fees for such services from its members. Furthermore, testimony at trial indicates that the Association had actual or implied knowledge of the improvements since in addition to the off-site upgrading construction involved, access to individual units was required to install special equipment.
The third condition, that the recipient be unjustly enriched, is more than amply demonstrated. All unit owners now receive enhanced cable service, twenty-eight channels compared to twelve, for the same $4.00 per month they have always paid for the basic service.[1]
Where, as here, services are rendered by one person for another and are knowingly and voluntarily accepted, the law presumes that such services are given and received in expectation of being paid for, and will imply *562 a promise to pay what they are reasonably worth. Yeats v. Moody, supra; Variety Children's Hospital, Inc. v. Vigliotti, 385 So.2d 1052 (Fla. 3d DCA 1980); Tobin & Tobin Insurance Agency, Inc. v. Zeskind, supra; Symon v. J. Rolfe Davis, Inc., supra. Accordingly, on the basis that Americable has demonstrated its entitlement to recover under quantum meruit, I would reverse and remand for a new trial.
NOTES
[1] The benefit conferred is the ability to receive additional channels. There is no evidence of individual unit owners actually using the additional channels.
[1] The majority's statement in footnote 1 that there is no evidence that the individual unit owners are actually using the additional channels is simply not credible in light of human nature and the fact that a number of unit owners, out of a sense of responsibility which demonstrates both their acquiescence in the enhanced service and knowledge of an expectation of compensation, are paying Americable directly for the increase.