**DICK WINNING CHRYSLER–PLYM-OUTH OF FT. MYERS, INC., a Florida Corp., Plaintiff-Appellant,**

v.

**CHRYSLER MOTORS CORPORATION and Chrysler Realty Corporation, a foreign corporation, Defendants-Appellees.**

No. 83–3397.

United States Court of Appeals, Eleventh Circuit.

Jan. 16, 1985.

Albert B. Lewis, St. Petersburg, Fla., for plaintiff-appellant.

Charles F. Clark, Ted R. Manry, III, Tampa, Fla., for defendants-appellees.

Before HATCHETT and CLARK, Circuit Judges, and STAFFORD *, District Judge.

HATCHETT, Circuit Judge:

This appeal is from the granting of a directed verdict against an automobile dealer which claimed that its automobile manu-

---

* Honorable William H. Stafford, Jr., Chief Judge, U.S. District Judge for the Northern District of

Florida, sitting by designation.

facturer breached their contract, violated the Florida Automobile Dealer's Act, and violated the Federal Dealers' Day in Court Act. We affirm.

### Facts

The appellant, Dick Winning Chrysler-Plymouth of Ft. Myers, Inc. (Winning Chrysler), was an automobile dealership doing business in Fort Myers, Florida. Richard D. Winning (Dick Winning) is president of this Florida corporation. Appellee, Chrysler Realty Corporation (Chrysler Realty), is a subsidiary of Chrysler Motors Corporation (Chrysler Motors). This subsidiary manages Chrysler's properties and handles Chrysler's land acquisitions on a management fee basis. Chrysler Realty also provides services for some of Chrysler's other subsidiaries.

On September 27, 1971, Winning Chrysler entered into a two-year dealership agreement. The dealership was the only Chrysler-Plymouth dealership in Fort Myers, Florida. The agreement provided that at the end of the term, September 27, 1973, a direct dealer agreement, with no fixed term, would be extended to the dealer, provided the dealer fulfilled all of the contract conditions. The two-year contract carried two provisions which are central to the controversy in this case. The agreement provided in paragraph 7:

(7) If this arrangement does not terminate sooner as provided in Paragraph (6), above, and thus continues in effect for the period set forth in said Paragraph (6), MOTORS, at expiration of such period, will enter into (a) regular Direct Dealer Agreement(s) for such new Vehicles with DEALER, provided that DEALER has fulfilled all of the following conditions which DEALER understands and agrees to be reasonable and necessary.

. . . .

(D) Constructed prior to the expiration of this Term Sales Agreement, facilities (acceptable to Motors) for its Plymouth Chrysler business at 2029 Cleveland Avenue, Ft. Myers, Florida. Relocated said business into such facilities and ceased its Plymouth Chrysler business at its present address. Dealer understands and agrees that location, building(s) or building plans must be approved by Motors prior to Dealer making any firm commitment for such facilities and prior to Dealer relocating its Plymouth Chrysler business into such facilities.

Paragraph 7(D) required that the dealership be relocated because appellee, Chrysler Motors, considered the current location a poor one for the sale of automobiles. It was Chrysler Motors's belief that automobile dealerships prospered in the outlying areas of cities where other automobile dealerships were also located.

The agreement also provided that the dealership would maintain sales equal to the automobile manufacturer's percentage of the national market in the Fort Myers area. This provision, known as the Minimum Sales Responsibility Provision, stated:

(7) If this arrangement does not terminate sooner as provided in Paragraph (6) above, and thus continues in effect for the period set forth in Paragraph (6), MOTORS, at expiration of such period, will enter into (a) regular Direct Dealer Agreement(s) for such new Vehicles with DEALER, provided that DEALER has fulfilled all of the following conditions which DEALER understands and agrees to be reasonable and necessary.

. . . .

(B) During the period the foregoing agreement has continued in effect, DEALER has sold at retail in the Sales Locality described in Paragraph (1), above, a sufficient number of new Vehicles for each line of Vehicles to equal or exceed DEALER'S Minimum Sales Responsibility as defined in Paragraph (7) of the said Direct Dealer Agreement(s).

Although relocation of the dealership was discussed between the parties on several occasions, Winning Chrysler neither relocated the dealership nor made any serious attempts to do so. At the end of the stipulated term of the agreement, Chrysler Motors allowed Winning Chrysler to continue to do business under six-month and one-

year extensions with the understanding that the dealership would be relocated.

On April 10, 1974, a district manager for the Fort Myers and Tampa, Florida, areas reviewed the agreement with Winning Chrysler and wrote on the Quality Contact Report: "Reviewed term agreement (expires 9–27–74) with dealer. Dealer realizes and accepts terms of term agreement to find land and relocate facility." A few days later, Winning Chrysler repudiated this extension agreement. A Chrysler zone manager, thereafter, informed Winning Chrysler that he would recommend nonrenewal of the term agreement. Subsequently, Chrysler terminated the term agreement and refused Winning Chrysler's offer to renew.

### Procedural Background

Winning Chrysler brought suit against Chrysler in a Florida circuit court, but this action was removed to the United States District Court for the Middle District of Florida. After an array of motions and amendments, Winning Chrysler filed its third amended complaint in the federal district court. Count I of the third amended complaint stated a cause of action for breach of contract and promissory estoppel against Chrysler Motors and Chrysler Realty. Count II of the third amended complaint alleged that Chrysler Motors violated the Florida Automobile Dealer's Act. Count III of the third amended complaint alleged that Chrysler Motors violated the Federal Dealers' Day in Court Act.

For the breach of contract and promissory estoppel claims, Winning Chrysler sought compensatory damages, all costs of the proceedings, and a trial by jury on all triable issues. For the alleged violations of the Florida Automobile Dealer's Act, Winning Chrysler sought damages in an amount equal to three times its pecuniary loss, plus costs and reasonable attorney's fees. It also requested a trial by jury on this claim. Finally, Winning Chrysler demanded judgment against Chrysler Motors in an amount in excess of $10,000 together with all costs of the proceedings and a trial by jury on all triable issues. Jurisdiction is based on diversity of citizenship.

Chrysler Motors justifies its termination of the dealership by pointing to Winning Chrysler's poor management, poor location, and failure to meet the minimum sales responsibility. Chrysler Motors also alleges that the dealership, because of poor management, suffered from kick-backs, embezzlement, and a warranty claims scheme. The dealership contends that Chrysler Motors was interested in terminating the term agreement because of disputes between Dick Winning and Chrysler Motors at another of his dealerships.

On April 26, 1983, the district court granted Chrysler Motors's motion for directed verdict as to all causes of action and entered a judgment for Chrysler Motors. The district court denied Winning Chrysler's motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. From these adverse rulings, Winning Chrysler appeals.

### Issues

The four principal issues which we must resolve are: (1) whether the district court erred in directing a verdict against Winning Chrysler on its claim alleging violation of the Florida Automobile Dealer's Act; (2) whether the district court erred in directing a verdict against Winning Chrysler on its claim alleging violation of the Federal Dealers' Day in Court Act; (3) whether the district court erred in directing a verdict against Winning Chrysler on its claims of breach of contract and promissory estoppel; and (4) whether the district court erred in directing a verdict on Winning Chrysler's warranty claims.

### Discussion

1. Florida Automobile Dealer's Act Claim.

■ Winning Chrysler contends that it submitted substantial evidence, notwithstanding the court's refusal to admit other evidence, to establish that Chrysler Motors violated the Florida Automobile Dealer's Act in failing to renew or in terminating the dealership. Chrysler Motors contends

that Winning Chrysler presented no credible evidence of bad faith or discriminatory allocation of automobiles; therefore, a directed verdict was proper.

The Florida Automobile Dealer's Act provides, in pertinent part:

320.64 Denial, suspension, or revocation of license; grounds

. . . .

(5) The applicant or licensee has coerced or attempted to coerce any motor vehicle dealer into accepting delivery of any motor vehicle or vehicles, parts or accessories therefor, or any other commodities which have not been ordered by the dealer.

. . . .

(8) The applicant or licensee has unfairly or without due regard to the equities of a motor vehicle dealer, or without just provocation, canceled, or failed to renew, the franchise agreement of such motor vehicle dealer.

(9) The applicant or licensee has attempted to enter, or entered, into a franchise agreement with a motor vehicle dealer who does not, at the time of the franchise agreement, have proper facilities to provide the services to his purchasers of new motor vehicles which are covered by the new motor vehicle warranty issued by the applicant or licensee.

320.696 Warranty responsibility

The licensee shall reasonably compensate any authorized motor vehicle dealer who performs work to rectify the licensee's product or warranty defects or fulfills delivery and preparation obligations. In the determination of what constitutes reasonable compensation under this section, the factors to be given consideration shall include, among others, the compensation being paid by other licensees to their dealers, the prevailing wage rate being paid by the dealers, and the prevailing labor rate being charged by the dealers, in the city or community in which the dealer is doing business.

320.697 Civil damages

Any person suffering pecuniary loss because of a violation by a licensee of §§ 320.60–320.70, shall have a cause of action against the licensee for damages, and may recover damages therefor in any court of competent jurisdiction in an amount equal to three times the pecuniary loss, together with costs and a reasonable attorney's fee to be assessed by the court. Upon a prima facie showing by the motor vehicle dealer that such a violation by the licensee occurred, the burden of proof shall then be upon the licensee to prove that such violation or unfair practice did not occur.

Fla.Stat. §§ 320.64(5), (8), (9); 320.696; 320.697 (1973).

Sections 320.60–70 were enacted to facilitate the legislative intent of ensuring fair dealing between motor vehicle manufacturers, motor vehicle dealers, and motor vehicle consumers. In addition, section 320.641 prohibits unfair cancellations of franchise agreements and provides for administrative review by the Director. The sole criterion for agency review, under section 320.-641(3), is whether a party "unfairly cancelled" the franchise agreement. *International Harvester Co. v. Calvin*, 353 So.2d 144, 147 (Fla.Dist.Ct.App.1977).

In *International Harvester Co.*, a truck dealer protested a manufacturer's cancellation of its franchise agreement. On review, the Florida appellate court held that the dealer had the initial burden of establishing that the manufacturer's decision to terminate the franchise agreement was unfair. The court further stated that the burden, following a prima facie showing of bad faith, shifts to the manufacturer to show by a preponderance of the evidence that it would have reached the same decision in the absence of the alleged bad faith. *International Harvester Co.*, 353 So.2d at 148 (citing *Mount Healthy City Board of Education v. Doyle*, 429 U.S. 274, 286, 97 S.Ct. 568, 575, 50 L.Ed.2d 471 (1977)).

After evaluating the substantial uncontroverted objective data produced by the parties, the *International Harvester* court concluded that any prima facie showing of unfairness by the dealer, Rich Motors, was clearly rebutted by the objective data sub-

mitted by the manufacturer. The court concluded that International Harvester's decision to terminate Rich Motors was in accordance with the parties' franchise agreement. Likewise, we find that Chrysler Motors's decision to terminate Winning Chrysler was in accordance with the parties' franchise agreement, and Winning Chrysler has failed to prove that Chrysler Motors imposed any "unfairness" upon the dealership.

2. Federal Dealers' Day in Court Act.

■ Winning Chrysler also contends that Chrysler Motors violated the Federal Dealers' Day in Court Act by not making a good faith effort to deliver vehicles ordered by the dealership. Winning Chrysler also asserts that the directed verdict against it was improper because its proof was sufficient on this issue. Chrysler Motors submits that it did not discriminatorily allocate automobiles to Winning Chrysler and sought to deliver vehicles which it ordered.

The Federal Dealers' Day in Court Act, provides, in pertinent part:

§ 1221. Definitions

. . . .

(e) The term "good faith" shall mean the duty of each party to any franchise, and all officers, employees, or agents thereof to act in a fair and equitable manner toward each other so as to guarantee the one party freedom from coercion, intimidation, or threats of coercion or intimidation from the other party: *Provided,* That recommendation, endorsement, exposition, persuasion, urging or agument [sic] shall not be deemed to constitute a lack of good faith.

§ 1222. Authorization of suits against manufacturers; amount of recovery; defenses

An automobile dealer may bring suit against any automobile manufacturer engaged in commerce, in any district court of the United States in the district in which said manufacturer resides, or is found, or has an agent, without respect to the amount in controversy, and shall recover the damages by him sustained and the cost of suit by reason of the failure of said automobile manufacturer from and after August 8, 1956 to act in good faith in performing or complying with any of the terms or provisions of the franchise, or in terminating, canceling, or not renewing the franchise with said dealer: *Provided,* That in any such suit the manufacturer shall not be barred from asserting in defense of any such action the failure of the dealer to act in good faith.

Title 15 U.S.C.A. §§ 1221(e), 1222 (West 1982).

The facts in *Woodard v. General Motors Corp.,* 298 F.2d 121 (5th Cir.), *cert. denied,* 369 U.S. 887, 82 S.Ct. 1161, 8 L.Ed.2d 288 (1962), are strikingly similar to the facts in this case. In *Woodard,* an automobile dealer brought suit against the manufacturer for breach of the automobile franchise agreement and for compensatory damages for breach of contract under 15 U.S.C.A. §§ 1221 and 1222. The former Fifth Circuit held that where an automobile franchise agreement provides that a dealer will maintain a place of business satisfactory to the manufacturer as to appearance, location, size, and layout, and also provides for termination of the agreement because of the dealer's failure to do so, the manufacturer does not breach the agreement by terminating the dealership for failure to abide by the contract provisions. *Woodard,* 298 F.2d at 126.

We find that the agreement in this case was properly terminated due to Winning Chrysler's failure to abide by the terms of the agreement. That agreement provided that the dealer would construct, prior to the expiration of the sales agreement, facilities acceptable to Chrysler Motors, relocate the Chrysler-Plymouth business into the new facilities, cease the business at the present address, and get the approval of Chrysler Motors as to the location, building, and building plans. The record reveals that Winning Chrysler has not complied with this contractual provision.

Accordingly, we hold that under the facts of this case, Chrysler Motors's termi-

nation of Winning Chrysler's franchise is in accordance with the parties' term agreement; the district court did not err in directing a verdict against Winning Chrysler on its cause of action for violation of the Federal Dealers' Day in Court Act. *Autohaus Brugger, Inc. v. Saab Motors, Inc.*, 567 F.2d 901, 910 (9th Cir.1978).

3. Breach of Contract and Promissory Estoppel.

■ Winning Chrysler contends that it did not acquire property and build a new facility because of the verbal promises made by Chrysler Motors, through its agent, Chrysler Realty, to purchase land and build a new facility near other automobile dealerships. Winning Chrysler claims that its evidence was sufficient to foreclose the district court's directed verdict on these issues. Florida courts have consistently held that the law will not imply or create a contract from controverted verbal exchanges where a valid written contract exists. *Hermanowski etc. v. Naranja Lakes Condominium*, 421 So.2d 558, 560 (Fla. Dist.Ct.App.1982); *Hazen v. Cobb*, 96 Fla. 151, 117 So. 853 (1928). Accordingly, Winning Chrysler's reliance upon a verbal or implied contract, in light of the existence of a valid written contract, is misplaced; the district court was correct in directing a verdict for Chrysler Motors on this claim.

4. Warranty Claims.

■ Finally, Winning Chrysler contends that its evidence shows Chrysler Motors failed to pay for warranty work under Florida and federal law. This claim is without merit. *See Autohaus Brugger, Inc. v. Saab Motors, Inc.*, 567 F.2d 901, 904–08 (9th Cir.1978). Finding no error in the district court's order, we hold that the court properly directed a verdict against Winning Chrysler on all counts of the complaint and that the court properly denied Winning Chrysler's motions for judgment notwithstanding the verdict and a new trial. Accordingly, the district court is

AFFIRMED.