# Third District Court of Appeal

## State of Florida

Opinion filed March 22, 2023.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D22-33
Lower Tribunal No. 17-25250
_____

**Jose A. Lopez Guevara,**
Appellant,

vs.

**Marie S. Lamothe,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Reemberto Diaz, Judge.

Ricardo Torres, Jr., for appellant.

Max A. Goldfarb, for appellee.

Before LOGUE, HENDON and BOKOR, JJ.

HENDON, J.

Jose A. Lopez Guevara ("Guevara" or "Appellant") appeals from an adverse final summary judgment. We reverse.

Background

The Appellee, Marie S. Lamothe ("Homeowner"), hired Guevara to perform a variety of remodeling and repair services to her property. Over the course of his services, she paid him a total of $32,500.00.[1] The record contains a March 18, 2017 "Roofing Proposal/Contract" showing a company header for "All Construction & Developers, Inc., General Contractor," indicating contractor license numbers, and signed by "sales rep." Mauricio Corredor. Hand inscribed above the company logo is "Jose A. Roofing."

In October 2017, the Homeowner filed a complaint for damages naming as defendants Guevara, Mauricio Corredor, and All Construction and Developers.[2] The Homeowner asserted counts for fraud, unjust enrichment, contract implied at law, and violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). The Homeowner alleged in

---

[1] The record contains copies of cashed checks from the Homeowner to, variously, "Jose A. Roofing," "Jose A Lopez Guevara," and "Jose Lopez."

[2] The Homeowner asserted in the complaint that All Construction & Developers had been voluntarily dissolved in May 2017. The record does not say what became of defendant Corredor during the litigation and this appeal deals solely with defendant Guevara.

her complaint that Guevara and Corredor claimed to be in the construction business, that they would remodel the Homeowner's property for $40,000, and would provide her with a detailed contract of work to be performed. She alleged they did not provide an additional contract, and despite her payments to Guevara, she contended that the work to her house was not completed.

Guevara answered the complaint, generally denying the allegations. Guevara asserted in his affidavit that he is not the party who entered into the alleged contract for house repair. Guevara stated that he is the Homeowner's neighbor, and as he is a construction worker, he agreed to provide the labor for her home remodeling because she was acting as her own contractor and would pull her own permits. Guevara attested that he provided a substantial amount of labor and completed major renovations to the property. He claimed that he and the Homeowner had a disagreement wherein she asked him to perform more work but was unwilling to pay him more than what she already paid him. Guevara claimed that the value of labor he performed at the Homeowner's direction and under her supervision exceeds what she actually paid him.

The Homeowner subsequently filed a motion for summary final judgment. In her motion, the Homeowner asserts that she paid Guevara

3

$32,500.00 for repair services to her house, that Guevara does not hold any licenses relating to contracting, and that he did not complete the majority of the promised work.

The hearing on the motion for summary judgment was reset many times, and ultimately took place on November 30, 2021.[3] The trial court granted the Homeowner's motion for summary final judgment. The trial court found that Guevara agreed to repair the Homeowner's real property for $40,000.00; that the Homeowner paid Guevara $32,500.00; that Guevara did some of the work, but as alleged in the Homeowner's motion for summary judgment, failed to install tile flooring, failed to install a new roof or paint the house, failed to repair a ceiling, did not remodel the kitchen or build out the bathroom or install new drywall throughout the house, did not replace damaged wood framing, and did not repair the air conditioning ducts. Further, the trial court determined that Guevara admitted that he did not carry a contractor's license, citing to section 489.128 and 489.105(3)(c), Florida Statutes, regarding contractor license requirements. Guevara appeals, contending that genuine issues of material fact remain that preclude summary judgment.

---

[3] There is no transcript in the record of the summary judgment hearing and no motion for rehearing appears in the record.

4

Our standard of review of a grant of summary judgment is de novo. Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000). Because the trial court entered summary judgment on December 7, 2021, the amended summary judgment rule, Florida Rule of Civil Procedure 1.510(a), effective May 1, 2021, applied.[4]

Analysis

There is no transcript of the summary judgment hearing in the record, so this Court cannot know what was argued below. Ordinarily, the lack of a transcript precludes appellate review. Applegate v. Barnett Bank of Tallahassee, 377 So. 2d 1150, 1152 (Fla. 1979). However, the record contains disputes of fact, and the trial court provided its findings of fact and conclusions of law in its order, which allows this Court to evaluate the correctness of the ruling. See Chaiken v. Suchman, 694 So. 2d 115, 117

---

[4] Florida Rule of Civil Procedure 1.510(a) provides:

(a) Motion for Summary Judgment or Partial Summary Judgment. A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court shall state on the record the reasons for granting or denying the motion. The summary judgment standard provided for in this rule shall be construed and applied in accordance with the federal summary judgment standard.

(Fla. 3d DCA 1997) (holding lack of transcripts of attorney's fee hearing was no impediment to appeal where the record showed issues had been raised below).

We conclude that the trial court erroneously based its legal conclusions on inapplicable law. The trial court cites to section 489.128, Florida Statutes, which provides in subpart (1), that "[a]s a matter of public policy, contracts entered into on or after October 1, 1990, by an unlicensed contractor shall be unenforceable in law or in equity by the unlicensed contractor." Further, "[f]or purposes of this section, an individual is unlicensed if the individual does not have a license required by this part concerning the scope of the work to be performed under the contract." §489.128(1)(a), Florida Statutes (2022). Here, the record shows that there was no contract between Guevara and the Homeowner,[5] and that Guevara never claimed to be a "contractor" or to hold a contractor's license.[6]

---

[5] The record shows that a "proposal," not a contract, was signed by "sales rep" Corredor under a corporate logo. It is not signed by the Homeowner or by Guevara, and does not provide any detailed description of services to be performed.  It is thus irrelevant to the issue on appeal.

[6] The arrangement between Guevara and the Homeowner can be considered an implied contract, as evidenced by the multiple checks she wrote to Guevara for, variously, "construction" and "materials."  Courts will find the existence of an implied contract of employment where "services were performed under circumstances fairly raising a presumption that the parties understood and intended that compensation was to be paid."

6

The trial court cites to the definition of "contractor" in section 489.105(3)(c), Florida Statutes, which states, in relevant part,

> (3) "Contractor" means the person who is qualified for, and is only responsible for, the project contracted for and means, <u>except as exempted in this part</u>, the person who, for compensation, undertakes to, submits a bid to, or does himself or herself or by others construct, repair, alter, remodel, add to, demolish, subtract from, or improve any building or structure, including related improvements to real estate, for others or for resale to others; . . .

The exemption referred to in subsection (3)(c) exists in section 489.105(7)(a), which provides that no "contractor license" is required for,

> (7)(a) Owners of property when acting as their own contractor and providing direct, onsite supervision themselves of all work not performed by licensed contractors:
>
> > 1. When building or improving . . . one-family or two-family residences on such property for the occupancy or use of such owners and not offered for sale or lease . . .

Guevara alleged in his affidavit that this is exactly the circumstances under which he agreed to provide remodeling and repairs to the Homeowner's house. He contends that the Homeowner told him that she would be acting as her own contractor and would acquire the necessary permits, and as a consequence he was not required to hold a contractor's license. The trial court's legal basis for granting summary judgment to the Homeowner, that

---

<u>Aldebot v. Story</u>, 534 So. 2d 1216, 1217 (Fla. 3d DCA 1988) (citing <u>Tipper v. Great Lakes Chem. Co.</u>, 281 So. 2d 10, 13 (Fla.1973)).

Guevara was an unlicensed contractor and that the "contract" is unenforceable, is thus incorrect.

In addition, we disagree that the Homeowner showed that there is no genuine dispute as to any material fact and that she is entitled to judgment as a matter of law. The record is entirely too vague to conclude that there remain no genuine issues of material fact. For example, Guevara asserts that he provided labor and materials in excess of what the Homeowner paid him for, but the record on appeal is woefully insufficient and the trial court merely recited the Homeowner's asserted facts verbatim from her motion for summary judgment. On de novo review of this record, there appears to be a disagreement between the two parties as to what services Guevara agreed to perform, what services he actually performed, and what the Homeowner expected or demanded that he perform.

We conclude that summary judgment was erroneously granted. Accordingly, we reverse the summary final judgment and remand for further proceedings.

Reversed and remanded.