**CREDIT BUREAU ENTERPRISES, INC., Appellee,**

v.

**Russell N. PELO, Appellant.**

No. 98–1201.

Supreme Court of Iowa.

March 22, 2000.

F. David Eastman of Eastman Law Office, Clear Lake, for appellant.

John R. Cherry of Bryant & Cherry, Mason City, for appellee.

McGIVERIN, Chief Justice.

In this appeal of a small claims decision, defendant Russell N. Pelo contends the district court erred by entering judgment against him for payment of a hospital bill.

Upon our review, we agree with the district court's conclusion and judgment that defendant Pelo is personally liable for the hospital bill.

## I. Background facts and proceedings.

On Sunday January 8, 1995, at 3:00 a.m., the Hardin County Magistrate was contacted by Dr. Gude from the Ellsworth Municipal Hospital in Iowa Falls in regard to a patient, Russell N. Pelo. The record indicates that Pelo left his marital residence, after having an argument with his

wife, and checked into a motel in Iowa Falls. Pelo later telephoned his wife "making threats of self harm" and purchased a shotgun. While the record is silent regarding the subsequent events, Pelo was apparently taken to the Ellsworth Municipal Hospital by the police, who had been advised of his threats.

Pursuant to the emergency hospitalization procedures set forth in Iowa Code section 229.22(3) and (4) (1995), the magistrate found probable cause that Pelo was seriously mentally impaired and likely to physically injure himself. The magistrate thus entered an emergency hospitalization order on January 8, requiring that Pelo be detained in custody at the hospital's psychiatric unit for examination and care for a period not to exceed forty-eight hours.

During admission to the hospital, Pelo was given a hospital release form to sign which would have made either Pelo or his insurance company responsible for the hospital bill. Pelo refused to sign the form. According to Pelo, at approximately five o'clock that morning, a nurse awakened him and demanded that he sign the hospital release form or the hospital could not insure the safety or return of his personal items. Pelo eventually read and signed the form. The form stated that Pelo understood he remained liable for any charges not covered by insurance.

Thereafter, Pelo's wife filed an application for involuntary hospitalization of Pelo pursuant to Iowa Code section 229.6 and apparently an order for immediate hospitalization was entered by a hospitalization referee under Iowa Code section 229.11.

An evidentiary hearing was held before the judicial hospitalization referee on January 13, concerning Pelo's commitment status. Medical reports and testimony were received by the referee. Pursuant to a written order, the hospitalization referee found that Pelo suffers from mental illness described as bipolar disorder, an illness from which Pelo has suffered for many years. In addition, the referee concluded "that although the Respondent [Pelo]

clearly is in need of and would benefit from treatment for a serious mental illness, the required elements for involuntary hospitalization are lacking," and that further involuntary hospitalization was not authorized. Pelo was released from the hospital and court jurisdiction as of January 13, 1995.

The hospital later sought compensation from Pelo in the amount of $2,775.79 for medical services provided to him from January 8 to January 13, 1995. Pelo refused to pay the bill or authorize his health insurance carrier to do so. The hospital later assigned its claim against Pelo concerning the hospital bill to plaintiff Credit Bureau Enterprises, Inc., for collection. Plaintiff Credit Bureau filed a petition against Pelo on the small claims docket in district court, seeking judgment on the hospital bill. Credit Bureau later also named Cerro Gordo county as a defendant, based on the theory that the county, Pelo's county of legal settlement, would be liable for mental health services provided to Pelo. See Iowa Code §§ 230.1, 230.2.

At a hearing concerning plaintiff's small claims petition, Pelo admitted that he was hospitalized from January 8 through January 13, 1995, but argued that he made no agreement to pay for services provided to him. Pelo explained that upon being admitted to the hospital, he refused to complete the hospital release form so that his health insurance carrier could be contacted for payment because he believed that he did not need evaluation or treatment. Pelo argued he later signed the release form under duress and that he did not agree to pay for medical services provided. Pelo stated he had health insurance and was not indigent at the time he was hospitalized.

The district associate judge concluded that there was no statutory requirement that Cerro Gordo county pay for medical services provided to Pelo during his hospitalization because Pelo was hospitalized at a private hospital and not a state hospital.

*See* Iowa Code § 230.1. The court further concluded, however, that as a matter of public policy and under a reasonable interpretation of the involuntary commitment and mentally ill support statutes in Iowa Code chapters 229 and 230, Pelo could not be permitted to receive court-ordered services and then choose to ignore his responsibility to pay for those services. The court therefore entered judgment in favor of plaintiff Credit Bureau and against Pelo in the amount of $2,775.79, plus interest. The court also dismissed Credit Bureau's claim against Cerro Gordo county.

Under Iowa Code section 631.13, Pelo appealed to a district court judge the district associate court's decision that he was personally liable for the hospital bill. However, neither Pelo nor the plaintiff appealed that portion of the decision dismissing plaintiff's claim against Cerro Gordo county. The county is therefore not involved in this appeal and is out of the case.

On Pelo's appeal, the district court judge affirmed. The court concluded that by signing the hospital form, Pelo had entered into a valid, enforceable contract to be financially responsible for the hospital bill. In doing so, the court rejected Pelo's contention that the agreement was not enforceable because he allegedly signed the form under duress. In the alternative, the court concluded that Pelo was liable for payment of the hospital bill under a theory of contract implied in law or quasi-contract, based on the court's conclusion that Pelo benefited from his hospitalization for which he should pay.

We granted Pelo's application for discretionary review. *See* Iowa Code § 631.16.

## II. Standard of review.

■ On discretionary review of a small claims action, *see* Iowa Code § 631.16, our standard of review depends on the nature of the case. *Hyde v. Anania*, 578 N.W.2d 647, 648 (Iowa 1998). If the action is a law case, we review the district judge's ruling on error. *Id.* This small claims case began as an action to collect on account, which is a law action. In such cases, we review the judgment of the district court for correction of errors at law. Iowa R.App. P. 4; *Meier v. Sac & Fox Indian Tribe*, 476 N.W.2d 61, 62 (Iowa 1991).

## III. Defendant's liability.

The issue we must decide is who pays for mental health medical services provided to a patient who is involuntarily committed to a private hospital. To answer this question, we first examine the applicable statutes governing involuntary hospitalization procedures for persons with mental illness.

## A. Statutory provisions concerning emergency hospitalization and involuntary commitment, Iowa Code chapters 229 and 230.

Pelo was hospitalized at the Ellsworth Municipal Hospital, which has a mental health ward, pursuant to the emergency hospitalization provisions set forth in Iowa Code section 229.22.

Pursuant to the emergency hospitalization procedures outlined in section 229.22(2), a peace officer may take a person, whom the officer believes to be mentally ill and because of that illness is likely to physically injure the person's self or others if not immediately detained, to the "nearest available facility as defined in section 229.11, subsections (2) and (3)." Possible facilities where the person may be taken include a "suitable hospital," *see* Iowa Code § 229.11(2), or a facility in the community which is licensed to care for persons with mental illness, Iowa Code § 229.11(3). A "hospital" is defined as a public or private hospital. Iowa Code § 229.1(5).

Ellsworth Municipal Hospital is a private hospital, *see* Iowa Code section 229.1(9) (defining private hospital), as opposed to a public hospital, but would seem to be an appropriate facility for placement

for purposes of emergency hospitalization proceedings. '

Iowa Code section 229.22(5) states that costs associated with the emergency hospitalization of a person at a *public hospital* shall be paid in the same way as if the person had been admitted to the hospital pursuant to involuntary commitment proceedings, *see* Iowa Code §§ 229.6–229.13. There appear to be no other relevant provisions in chapter 229 concerning payment of costs associated with emergency hospitalization or involuntary commitment of a person at a private hospital.

Pursuant to Iowa Code sections 230.1 and 230.10, a patient's county of legal settlement is liable for costs and expenses associated with the custody, care and commitment of the patient at a *state* hospital. The term "state hospital" refers to the facilities in Mount Pleasant, Independence, Clarinda and Cherokee, Iowa, *see* Iowa Code § 226.1, and thus would not include a private hospital such as Ellsworth Municipal Hospital. A county paying such costs, however, could seek reimbursement from the patient or from persons liable for the patient's support pursuant to Iowa Code section 230.15. Additionally, Iowa Code section 227.14 provides that where a county does not have proper facilities for caring for persons with mental illness, the county board of supervisors may provide for such care at the expense of the county in any private institution for persons with mental illness. No such provision was made by Cerro Gordo county in the present case.

Although sections 230.1 and 230.10 clearly impose a duty on a patient's county of legal settlement to pay for costs associated with emergency hospitalization or involuntary commitment of the patient at a state hospital, there appears to be no statutory provision, other than section 227.14, which requires a county to pay for such costs incurred at a *private* hospital. *See* 1991 Op. Iowa Att'y Gen. 135, 136 ("There is no mandatory requirement or provision in chapter 230 that requires a county to pay for cost of mental health treatment at a private facility.").[1] Nor is there any specific statutory provision addressing a patient's financial responsibility for such costs at a private hospital. The only discussion in chapter 230 concerning a patient's liability for medical costs is in Iowa Code section 230.18, which states that the estates of persons legally bound for the support of persons with mental illness who are treated in any county or *private hospital* shall be liable to the county for the reasonable cost of such support. Thus, while it is clear that a patient's county of legal settlement is liable for costs associated with emergency hospitalization or involuntary commitment at a state hospital, there seems to be a gap in the statutory framework concerning who must pay for such costs incurred at a *private* hospital.

**B. Liability under implied contract theory.**

The district court judge concluded that Pelo was liable for payment of the private

---

1. Before its repeal in 1981, Iowa Code section 444.12 imposed a duty on counties to pay for the costs of mental health treatment at private facilities:

> The board of supervisors of each county shall establish a county mental health and institutions fund, from which shall be paid:
> . . . .
> 3. The cost of care and treatment of persons placed in the county hospital, county care facility, a health care facility as defined in section 135C.1, subsection 8, or any other public or private facility:
> a. In lieu of admission or commitment to a state mental health institute . . . .

*See* 1980 Op. Iowa Att'y Gen. 425, 427 (stating that under Iowa Code § 444.12(3) a county of legal settlement is liable for costs of care in a private psychiatric facility to which a person is committed in lieu of a state mental health institute); 1980 Op. Iowa Att'y Gen. 359 (1979) (stating that county is liable for costs of care and treatment of mentally ill patients in private facilities under Iowa Code § 444.12(3)).

Iowa Code section 444.12 was repealed in 1981 and no other code provision was enacted in its place concerning a county's duty to pay for mental health treatment in a private facility.

hospital bill under a contract implied in law or quasi-contract theory.

### 1. Applicable law.

"A contract implied in law is an obligation imposed by the law without regard to either party's expressions of assent either by words or acts." *Irons v. Community State Bank,* 461 N.W.2d 849, 855 (Iowa App.1990) (citing Corbin on Contracts § 19 (1952)). Such contracts do not arise from the traditional bargaining process, but rather "rest on a legal fiction arising from considerations of justice and the equitable principles of unjust enrichment." *Hunter v. Union State Bank,* 505 N.W.2d 172, 177 (Iowa 1993). As such, they are not real contracts and the general rules of contracts therefore do not apply to them. *Id.; accord* 1 Samuel Williston, *A Treatise on the Law of Contracts* § 1:6, at 27 (Richard A. Lord ed., 4th ed.1990) (hereinafter "Williston"). More specifically, the contracts clause of article I, section 10 of the United States Constitution does not apply to quasi-contracts. Williston, § 1:6, at 27.

"Restitution and unjust enrichment are modern designations for the older doctrine of quasi contracts or contracts implied in law, sometimes called constructive contracts." *Robert's River Rides v. Steamboat Dev. Corp.,* 520 N.W.2d 294, 302 (Iowa 1994) (citations omitted). The term " 'unjust enrichment is an equitable principle mandating that one shall not be permitted to unjustly enrich oneself at the expense of another or to receive property or benefits without making compensation for them.' " *Id.* (quoting *West Branch State Bank v. Gates,* 477 N.W.2d 848, 851–52 (Iowa 1991)). Under these principles, where a person acts to confer benefits on another in a setting in which the actor is not acting officiously, the benefited party may be required to make restitution to the actor. *Okoboji Camp Owners Co-op. v.*

*Carlson,* 578 N.W.2d 652, 654 (Iowa 1998) (citing Restatement of Restitution §§ 1, 2 (1936)). Thus, where a person performs services for another which are known to and accepted by the latter, the law implies a *promise to pay* for those services. *Patterson v. Patterson's Estate,* 189 N.W.2d 601, 604 (Iowa 1971); *Snyder v. Nixon,* 188 Iowa 779, 781, 176 N.W. 808, 809 (1920) ("The general rule is that where one renders services of value to another with his knowledge and consent, the presumption is that the one rendering the services expects to be compensated, and that the one to whom the services are rendered intends to pay for the same, and so the law implies a promise to pay.").

The Restatement of Restitution states that "[a] person who officiously[2] confers a benefit upon another is not entitled to restitution therefor." Restatement of Restitution § 2. Under this rule, recovery is denied so that one will not have to pay for a benefit forced upon one against one's will, *see* 1 E. Allan Farnsworth, *Farnsworth on Contracts* § 2.20, at 173 (2d ed.1998), or for which one did not request or knowingly accept. *See Nursing Care Servs. v. Dobos,* 380 So.2d 516, 518 (Fla.Dist.Ct.App.1980) (referring to rule as the "officious intermeddler doctrine").

In certain circumstances, however, restitution for services performed will be required even though the recipient did not request or voluntarily consent to receive such services. For example, section 116 of the Restatement of Restitution provides:

> A person who has supplied things or services to another, although acting without the other's knowledge or consent, is entitled to restitution therefor from the other if
>
> (a) he acted unofficiously and with intent to charge therefor, and

---

**2.** "Officiousness means interference in the affairs of others not justified by the circumstances under which the interference takes place." Restatement of Restitution § 2 cmt. a.

(b) the things or services were necessary to prevent the other from suffering serious bodily harm or pain, and

(c) the person supplying them had no reason to know that the other would not consent to receiving them, if mentally competent; and

(d) *it was impossible for the other to give consent or,* because of extreme youth or *mental impairment, the other's consent would have been immaterial.*

(Emphasis added.) Comment b to section 116 states:

Knowledge of dissent. There can be no restitution for services or things rendered to a person *who refuses to accept the services and who is of sufficient mental capacity to understand the necessity of receiving them.* ... *If, however, the person is insane, or if he is otherwise not fully mentally competent,* ... a person rendering necessaries or professional services is entitled to recover from such person under the conditions stated in this Section, *although the person expresses an unwillingness to accept the things or services.*[3]

(Emphasis added.)

In addition to the principles set forth in the Restatement of Restitution discussed above, cases from other jurisdictions have concluded that a patient is liable for the reasonable value of medical services rendered by a hospital based on an implied in law contract theory. *See Nursing Care Servs.,* 380 So.2d at 518 (concluding that provider of nursing care services was entitled to value of services provided to patient based on emergency aid quasi-contract theory); *Galloway v. Methodist Hosps., Inc.,* 658 N.E.2d 611, 614 (Ind.Ct.App. 1995) (holding that equity demanded that patients pay for medical services rendered by hospital in birth of child to prevent unjust enrichment); *Heartland Health Sys. v. Chamberlin,* 871 S.W.2d 8, 11 (Mo. Ct.App.1993) (affirming on appeal judgment entered in favor of hospital against patient for payment of medical services under quantum meruit theory); *Morehead v. Conley,* 75 Ohio App.3d 409, 599 N.E.2d 786, 789 (1991) (holding defendant liable under quasi-contract theory for reasonable value of services rendered by physician); *Porter v. McPherson,* 198 W.Va. 158, 479 S.E.2d 668, 675 (1996) (holding that hospital had claim against patient based on implied contract for reasonable value of services rendered even though patient was not fully compensated by settlement with at-fault party; medical provider's claim rests upon debtor-creditor relationship and cannot be extinguished by doctrine of subrogation).

### 2. Application of law to facts.

The district court concluded that Pelo benefitted by his hospitalization and that Pelo was liable for medical services rendered to him. Upon our review, we agree with the district court's decision.

We first point out that Pelo does not challenge the factual basis for his hospitalization. Nor is it likely that such a challenge would be successful given the fact that the necessary probable cause findings concerning emergency hospitalization by the magistrate, *see* Iowa Code § 229.22(3), and involuntary commitment procedures by the hospitalization referee, *see* Iowa Code § 229.11, were made. These fact-finding requirements are in place to guarantee a patient's liberty and due process interests when the state exercises its authority through emergency hospitalization and involuntary commitment proceedings. This authority is based on the standard for

---

**3.** Another illustration explains:

A is seriously hurt in an accident. Becoming hysterical with pain, he fights his rescuers and refuses to permit anyone to touch him. Over his protests, B, a surgeon, renders first aid services in stopping a hemorrhage which soon would have caused A's death. B is entitled to compensation from A.

Restatement of Restitution § 116 cmt. b, illus. 4.

commitment, "serious mental impairment" as defined in section 229.1(14), which "melds the important elements of the police power and parens patriae doctrine." *B.A.A. v. University of Iowa Hosps.*, 421 N.W.2d 118, 122–23 (Iowa 1988) (discussing historical background of state's authority in involuntary commitment proceedings).

Pelo also does not challenge the hospitalization referee's finding that he suffers from mental illness described as bipolar disorder. Nor does Pelo challenge the district court's finding that $2,775.79 was the reasonable cost of services provided to him during his hospitalization. Pelo contends, however, that he has no duty to pay for those services because he did not ask to be hospitalized and derived no benefit from his hospitalization. Pelo bases his argument, in part, on the hospitalization referee's finding made after the commitment hearing that further hospitalization was not authorized (based on a finding that there was not clear and convincing evidence that Pelo was seriously mentally impaired, *see* Iowa Code § 229.13). Pelo apparently interprets the referee's decision to mean that he should not have been hospitalized in the first place and that he therefore derived no benefit from his hospitalization.

We find no merit in these contentions. First, the hospitalization referee's final decision is not relevant to Pelo's duty to pay for services previously rendered to him by the hospital. The referee's decision only addressed the propriety of any *future* hospitalization, not whether there was an adequate basis for hospitalization of Pelo in the first place or whether he medically benefited from his hospitalization.

Second, Pelo's opinion as to whether he needed or consented to medical services provided to him during his hospitalization is essentially irrelevant. This is because the emergency hospitalization order, which was based on the magistrate's probable cause finding that Pelo was seriously mentally impaired, *see* Iowa Code § 229.22(3),

establishes that Pelo lacked sufficient judgment to make responsible decisions concerning hospitalization and lacked the ability to consent to treatment. *See* Iowa Code § 229.1(14) (defining "seriously mentally impaired").

Additionally, like the district court, we find that Pelo's hospitalization was indeed of medical benefit to him. The hospital provided services to Pelo from January 8 to 13, 1995, in good faith and not gratuitously. Such services were provided for Pelo's benefit, pursuant to court orders based on probable cause findings that Pelo was seriously mentally impaired and likely to injure himself or others if not immediately detained in the hospital. Based on the later reports of the physicians who examined and evaluated Pelo during his hospitalization, the referee found that Pelo "clearly is in need of and would benefit from treatment for a serious mental illness." This finding, we believe, would at a minimum alert Pelo to the seriousness of his mental illness and the need for further treatment, a fact that would surely be of medical benefit to him. The fact that Pelo was involuntarily hospitalized in order that this evaluation and finding could be made, and the fact that he may disagree with whether this finding is of medical benefit to him, does not eliminate the medical benefit he received from such hospitalization.

We conclude that plaintiff is entitled to recover the value of those medical services provided to Pelo. *See* Restatement of Restitution § 116 cmt. b (if a person is otherwise not fully mentally competent, a person rendering necessaries or professional services is entitled to recover from such person although the person expresses an unwillingness to accept the services). The district court therefore properly determined that Pelo was legally obligated to pay for those services based on an implied in law contract theory. *See Heartland Health Sys.*, 871 S.W.2d at 11 (affirming on appeal judgment entered in favor of hospital against patient for payment of

medical services under quantum meruit theory).

Because we conclude that Pelo is legally obligated to pay for medical services provided to him under an implied contract in law or quasi-contract theory, we need not consider whether an express contract was formed based on Pelo's later signature on the hospital admission form. *See Johnson v. Dodgen,* 451 N.W.2d 168, 175 (Iowa 1990) (the existence of a contract generally precludes the application of the doctrine of unjust enrichment); *Chariton Feed & Grain, Inc. v. Harder,* 369 N.W.2d 777, 791 (Iowa 1985) (an express and an implied contract cannot be found to exist on the same subject matter).

## C. Constitutional claims.

 Pelo further contends that to require him to pay for medical services he did not want or ask for violates either his constitutional right to due process under article I, section 9 of the Iowa Constitution, or his right to contract under article I, section 21 of the Iowa Constitution. These contentions have no merit. First, quasi-contracts are not true contracts and therefore the general rules of contract, including the constitutional provisions concerning the right to contract, do not apply to them. *See* Williston, § 1:6, at 27.

Additionally, we point out that Pelo does not assert that the emergency hospitalization or involuntary commitment proceedings are constitutionally invalid. Based on this fact, and the preliminary factual probable cause findings of the magistrate and hospitalization referee that Pelo was seriously mentally impaired, we assume that Pelo's involuntary hospitalization complied with the requisite procedural due process safeguards. Having established these facts, holding Pelo liable for payment of the medical services provided to him during his hospitalization does not violate his constitutional right to due process or his right to contract under the Iowa Constitution.

## IV. Disposition.

We conclude that the district court properly determined that defendant Pelo was liable for payment of mental health medical services provided to him during his hospitalization at Ellsworth Municipal Hospital under a quasi-contract theory. The court therefore properly entered judgment in favor of plaintiff Credit Bureau against defendant Pelo for the amount of the hospital bill.

We affirm the judgment of the district court.

**AFFIRMED.**

All justices concur except CARTER, J., who takes no part.