**TAMA COUNTY, Iowa, Appellee,**

v.

**GRUNDY COUNTY, Iowa, Appellant.**

**No. 00–2108.**

Supreme Court of Iowa.

July 17, 2002.

Bradley J. Harris, Assistant County Attorney, for appellant.

Carlton G. Salmons of Gaudineer & Comito, L.L.P., West Des Moines, for appellee.

Diane Kutzko and Carroll Reasoner of Shuttleworth & Ingersoll, P.L.C., Cedar Rapids, for amicus curiae Iowa Hospital Association.

CARTER, Justice.

Grundy County appeals from a judgment requiring it to reimburse Tama County for the medical care, services, and treatment of S.P., an individual involuntarily hospitalized in Tama County, but whose county of legal settlement was Grundy County. The hospitalization at issue in the present case was in a private hospital in Cedar Rapids. Grundy County contends that the county of a patient's legal settlement is only required to reimburse another county which has paid for the patient's hospitalization expenses if the care is provided in a state hospital. After reviewing the record and considering the arguments presented, we affirm the judgment of the district court.

The facts in this matter are undisputed. S.P., an adult whose county of legal settlement was Grundy County, was found in Tama County on November 23, 1999. Because of her demeanor, involuntary hospitalization proceedings were commenced. She was adjudicated as mentally ill and in need of immediate hospitalization for her health, safety, and welfare. S.P. was involuntarily hospitalized in Mercy Medical Center in Cedar Rapids, Iowa, and treated there by private physicians. Both the hospital and the physicians had been designated by Tama County as care providers under a county single-entry-point-process plan for organizing, financing, and delivering mental health services pursuant to Iowa Code section 331.439 (Supp.1999). S.P. was discharged from Mercy Medical Center on December 23, 1999. Tama County paid $2959.57 for the hospital and medical services required under the order of involuntary hospitalization.

Tama County subsequently made a demand upon Grundy County for reimbursement of the amounts paid on S.P.'s behalf. When Grundy County failed to make the reimbursement, Tama County filed a petition for declaratory judgment. The district court concluded that Grundy County was obligated to reimburse Tama County for the costs of S.P.'s involuntary hospitalization.

In seeking to overturn the district court's order, Grundy County urges that the issue has been settled in its favor by *Credit Bureau Enterprises, Inc. v. Pelo,* 608 N.W.2d 20 (Iowa 2000). The issue in the *Credit Bureau Enterprises* case concerned the contractual liability of a patient who had been involuntarily hospitalized in a private hospital. The patient contended that the county of legal settlement was liable for the costs of the hospitalization. We noted that at the time of the patient's hospitalization, which took place in 1995, Iowa Code section 230.1 only made the county of legal settlement liable for involuntary hospitalizations in a state hospital unless the county had contracted with a private hospital under Iowa Code section 227.14. Because the county in the *Credit Bureau Enterprises* case had not contracted for such services, we held that it had no responsibility to pay for the costs in a private hospital.

At the time *Credit Bureau Enterprises* was decided, Iowa Code section 230.1 only rendered a county of legal settlement liable to pay the costs of involuntary hospitalization in a state hospital. We are convinced that this changed, however, when in 1996 the legislature added what is now subsection 3 to section 230.1. As amended, that statute now reads:

1. The necessary and legal costs and expenses attending the taking into custody, care, investigation, admission, commitment, and support of *a person with mental illness admitted or committed to a state hospital* shall be paid by a county or by the state as follows:

a. By the county in which such person has a legal settlement, if the person is eighteen years of age or older.

b. By the state when such person has no legal settlement in this state, when the person's legal settlement is unknown, or if the person is under eighteen years of age.

2. The legal settlement of any person found mentally ill who *is a patient of any state institution* shall be that existing at the time of admission thereto.

3. A county of legal settlement is not liable for costs and expenses associated with a person with mental illness unless the costs and expenses are for services and other support authorized for the person through the single entry point process. For the purposes of this chapter, *"single entry point process"* means the same as defined in section 331.440.

Iowa Code § 230.1 (Supp.1999) (emphasis added).

In creating the single-entry-point process, the legislature provided persons in need of services with one location for completing the necessary paperwork, arranging clinical assessments for determination of appropriate services, and granting eligibility determinations. *See* 1994 Iowa Acts ch. 1163, § 4 (codified at Iowa Code § 331.440 (1995)). Shortly thereafter, Iowa Code sections 229.11 and 229.13 were also amended to require the courts to make involuntary hospital commitments under the single-entry-point process. 1996 Iowa Acts ch. 1183, §§ 20, 21. In the case of court-ordered hospitalizations, we conclude that this language has reference to the single-entry process of the county in which the emergency or involuntary commitment is ordered.

■ Iowa Code section 331.440(3) provides:

An application for services may be made through the single entry point process of a person's county of residence. However, if a person who is subject to a single entry point process has legal settlement in another county or the costs of services or other support provided to the person are the financial responsibility of the state, an authorization through the single entry point process shall be coordinated with the person's county of legal settlement or with the state, as applicable.

It appears that this statute is aimed at the situation in which an application for mental health services is being processed outside of a court-ordered hospitalization. A recent attorney general's opinion suggests that that is the case. That opinion states:

In specifying the use of a single entry point process, the legislature did not specify whether to use the particular process of the person's county of legal settlement, county of residence, or county where the person is found.... Based on the complex nature of legal settlement determinations, requiring a court to determine, prior to hearing, the person's county of legal settlement, would place an undue burden upon the commitment process. A court should not be burdened with determining legal settlement prior to a commitment in order for liability to follow.

1997 Op. Iowa Att'y Gen. 2–1. We agree with the attorney general's opinion.

■ In interpreting statutes, we consider the objects sought to be accomplished and the evils and mischief sought to be remedied, seeking a result that will advance rather than defeat the statute's purpose. *Danker v. Wilimek,* 577 N.W.2d 634, 636 (Iowa 1998); *Harris v. Olson,* 558 N.W.2d 408, 410 (Iowa 1997). It is presumed that the legislature inserted every part of a statute for a purpose. *In re Estate of Thomann,* 649 N.W.2d 1 (Iowa 2002); *Miller v. Westfield Ins. Co.,* 606 N.W.2d 301, 305 (Iowa 2000). Consequently, we avoid interpreting a statute so as to render a portion of it redundant or irrelevant. *T & K Roofing Co. v. Iowa Dep't of Educ.,* 593 N.W.2d 159, 162–63 (Iowa 1999).

■ In applying the foregoing principles to the interpretation of section 230.1, we conclude that the language "a county of legal settlement is not liable for costs and expenses associated with a person with mental illness unless the costs of expenses are for services and other support authorized for the person through the single-entry process," must be read as also supporting the converse of what it declares, *i.e.,* that a county of legal settlement is liable for such costs if they are authorized through the single-entry-point process. S.P.'s hospitalization and medical expenses were authorized through the single-entry-point process. Tama County, having paid for expenses for which Grundy County is primarily responsible under the law, is entitled to reimbursement.

We have considered all issues presented and conclude that the decision of the district court was correct.

**AFFIRMED.**