In the

# United States Court of Appeals

### For the Seventh Circuit

No. 15-3361

NATIONWIDE ADVANTAGE MORTGAGE COMPANY,

*Plaintiff-Appellant*,

*v.*

GSF MORTGAGE CORPORATION,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:13-cv-01420-LA — **Lynn Adelman**, *Judge*.

ARGUED MAY 27, 2016 — DECIDED JUNE 27, 2016

Before POSNER and FLAUM, *Circuit Judges*, and ALONSO, *District Judge*.[*]

POSNER, *Circuit Judge*. Nationwide Advantage Mortgage Company (we'll call it NAMC for short) of Des Moines, Iowa, a subsidiary of Nationwide Mutual Insurance Company (itself affiliated with other insurance companies, many also called Nationwide), buys, services, and sells residential

[*] Of the Northern District of Illinois, sitting by designation.

mortgages. GSF Mortgage Corporation is a residential-mortgage lender that also sells mortgages; its headquarters are in Wisconsin. (The different states of the parties will figure in our analysis.)

NAMC filed this diversity suit against GSF in a federal district court in Wisconsin, charging breach of contract, breach of fiduciary duty, fraud, and unjust enrichment. The district judge granted summary judgment in favor of GSF on all of NAMC's claims, and so entered final judgment for GSF, precipitating this appeal.

In 2006 the two companies had entered into a Correspondent Lender Purchase Agreement whereby GSF would sell mortgage loans to NAMC. The agreement provided that Iowa law would govern any disputes concerning it. GSF wanted to use a computer program owned by Fannie Mae (the name by which the Federal National Mortgage Association, which seeks to encourage mortgage lending, is generally known), called the Fannie Mae Desktop Originator System (DO for short), which evaluates potential mortgagors to determine whether they meet Fannie Mae's eligibility standards. To be allowed to obtain DO reports, however, GSF needed to have at least one sponsoring lender. Any company that routinely sold mortgage loans to Fannie Mae was eligible. GSF had several sponsors in the period relevant to this case (2006 to 2011)—and one of them was NAMC.

Every time GSF downloaded a DO report it had to pay Fannie Mae a $15 fee and the sponsoring lender had to pay Fannie Mae between $20 and $28. GSF claims without contradiction that it didn't know that the sponsoring lender as well as the downloader had to pay a fee. Although in 2008 NAMC tried to terminate its Correspondent Lender Pur-

chase Agreement with GSF (and to simplify this opinion we'll assume it succeeded, though there is a dispute about this), it failed to notify GSF to stop using it as a sponsoring lender and GSF didn't stop. Not until 2011 did NAMC rescind its sponsorship of GSF—something it could have done at any time simply by clicking a box on the DO website.

Between 2008, when NAMC had terminated or thought it had terminated its lender purchase agreement with GSF, and 2011, when NAMC finally did terminate its sponsorship of GSF on the DO system, NAMC was billed by Fannie Mae for almost $278,000 in fees for GSF's use of the system. It had paid those fees, and now it seeks damages from GSF equal to that amount, plus prejudgment interest.

The Correspondent Lender Purchase Agreement authorized but did not require GSF to sell mortgages to NAMC that NAMC would either service or resell. But GSF stopped selling mortgages to NAMC in 2008, with the consequence that NAMC no longer received any benefit from the sponsorship costs that it was continuing to pay Fannie Mae; the income flow that it had obtained from reselling or servicing mortgages sold to it by GSF had dried up.

NAMC's designation as a sponsoring lender of GSF was not part of the Correspondent Lender Purchase Agreement, and so NAMC did not cease to be a sponsoring lender when the agreement expired, or indeed until three years later. And in the meantime it had to and did pay a fee to Fannie Mae every time GSF ordered a DO report from Fannie and in doing so designated NAMC as the sponsoring lender.

NAMC is a sophisticated enterprise, part of a huge conglomerate; its failure to cancel its sponsorship of GSF when

it severed all its other relations to that company was an inexplicable blunder for which it has only itself to blame.

Its argument that GSF was "unjustly enriched" by NAMC's continued sponsorship after termination of the Correspondent Lender Purchase Agreement with GSF also fails. Remember that GSF claims to have been unaware (and that NAMC does not dispute the claim) that Fannie Mae charged a sponsoring lender a fee for GSF's use of the DO. NAMC—receiving monthly invoices from Fannie Mae that identified GSF as a DO user sponsored by NAMC—had only to inform Fannie Mae that it was not a sponsor of GSF, and therefore should not be billed for GSF's DO downloads, to avoid the expenses that it is seeking to recover. What would be unjust would be to force GSF to pay NAMC damages based on fees that it had no reason to think its sponsor had incurred and therefore no reason to expect to be liable for them.

NAMC's excuse for failing to learn from the Fannie Mae invoices that GSF was a DO user sponsored by NAMC is that the invoices used a number to identify GSF rather than the company's name. But of course NAMC knew the ID numbers of all of the mortgage companies for which it was a sponsoring lender, and so could readily have determined the source of the DO charges that it was being assessed.

Its claim of unjust enrichment did however provoke a dispute between the parties over choice of law that warrants our brief attention. Remember that the Correspondent Lender Purchase Agreement provides that Iowa law is to govern any disputes arising out of the agreement. But GSF points out that NAMC's claim of unjust enrichment stemming from the dispute over liability for the fees charged it by Fannie

Mae for DO downloads did not arise from the agreement. The contract, executed before the downloads began and not cancelled until much later, said nothing about downloads. And the downloads thus being *dehors* the contract, the contract's choice of law provision doesn't apply to the parties' dispute over unjust enrichment.

In any event, there's no relevant difference between the two states' choice of law principles governing claims of unjust enrichment, a factor that under Wisconsin law renders a conflicts of law analysis unnecessary and requires applying the law of the forum state, which is Wisconsin. *A.O. Smith Corp. v. Allstate Insurance Companies*, 588 N.W.2d 285, 294 (Wis. App. 1998). Iowa unjust-enrichment law asks whether "it is unjust to allow the defendant to retain the benefit under the circumstances," *Iowa Dept. of Human Services ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 155 (Ia. 2001), Wisconsin law whether the "acceptance or retention by the defendant of the benefit [takes place] under circumstances making it inequitable for the defendant to retain the benefit without payment of its value." *Puttkammer v. Minth*, 266 N.W.2d 361, 363 (Wis. 1978). There is little if any substantive difference between these formulas.

What is important to note, though this is not a choice of law issue either, is that both states require, for a finding of unjust enrichment, proof that the defendant is aware of the benefit that he's received and the plaintiff wants back. *Credit Bureau Enterprises, Inc. v. Pelo*, 608 N.W.2d 20, 25 (Ia. 2000); *S & M Rotogravure Service, Inc. v. Baer*, 252 N.W.2d 913, 915 (Wis. 1977). That is critical in this case. There is nothing unjust or inequitable (two words that in legal discourse mean the same thing) about GSF's refusing to reimburse NAMC

for expenses that it had no reason to think that company had incurred. Had it known it might have to pay such expenses it might have adjusted its business arrangements to avoid that liability.

In addition to arguing unjust enrichment, NAMC argues that GSF violated the provision of the Correspondent Lender Purchase Agreement that forbids disclosure, or inappropriate use, of proprietary information, which NAMC contends includes its name and its sponsoring-lender sponsorship number. The fact of sponsorship is not proprietary information, however; NAMC's name is known throughout the industry. And all GSF did was select NAMC from a list of sponsoring lenders on the DO system. We can assume that the contents of the DO reports were proprietary, but the reports belonged to Fannie Mae rather than to NAMC.

In desperation it quotes, from paragraph 12 of the Correspondent Lender Purchase Agreement, a passage which states that GSF agrees to indemnify NAMC, even after the agreement is terminated, for "any and all claims, losses, costs, and expenses, including reasonable attorneys' fees, which [NAMC] may incur." But NAMC omits the rest of the paragraph, which gives examples of covered acts and omissions. The examples make clear that a duty to indemnify can arise only from wrongful acts or omissions by GSF that GSF could reasonably have been expected to detect, such as "origination of loans in violation of Applicable Law," "breach of any provision … of [the Correspondent Lender Purchase] Agreement," "discrimination, malfeasance, negligence, failure to follow Participant Guidelines … [or] Applicable Law," or fraud in the origination of loans. There is no evidence that GSF committed any of the specified misdeeds,

or even misdeeds similar to those specified in the Agreement. Remember that the Agreement does not address GSF's use of NAMC's DO sponsorship, and so GSF did not violate the Agreement in continuing to use NAMC as a sponsor after their business relationship ended.

NAMC fires a scattershot of other arguments, all as weak as or even weaker than the ones we've discussed, such as that GSF was its agent and so had a fiduciary duty of care to NAMC as principal—the Correspondent Lender Purchase Agreement is explicit that the two companies are independent contractors.

Enough said. The judgment of the district court is

AFFIRMED.